Argument not to exceed 15 minutes per side. Mr. Eckes, you may proceed for the appellant. Good morning, Your Honors. Eric Eckes on behalf of Mr. McNoriell. Your Honors, there's this binary that the Sixth Circuit case law, but I think all the circuits would agree on this binary between someone who's representing themself pro se and someone who's represented. Now there can be some flexibility within that binary, but it still has a strong line in between it. And on one side of the room where we have a pro se defendant in control of his case, that's what this case is. And there are consequences that flow from that. One of those consequences is that the defendant in this situation, where even there could be flexibility, there could be delegation to the lawyer for some things. But in that instance, the defendant, as the lawyer, has to be present for all critical stages. And the Wiggins tells us that in this boat of the defendant being pro se, the standby counsel cannot speak instead of the defendant, cannot destroy the appearance to the jury that the defendant is in control, and cannot make significant tactical decisions without the defendant's input. So why didn't the defendant mention this at trial? Because the defendant didn't know what was happening. He wasn't there. He was there, but he wasn't permitted to be at the bench conference. So he couldn't hear what was happening. He could have said, I want to be at the bench conference, and he never complained about that. He could have said that, but what matters is what was... So we have to rewind to what the defendant was actually told. He was told by the district court that his standby counsel was going to operate as a telephone. There was a plan put in place during the pretrial. You are going to... This is your jury, he was told. You're going to enter your challenges for cause. So effectively, what he is told is happening at these bench conferences is his words are being given to the judge. But once it actually, the reality sets in of what's happening, there's this muscle memory that kicks in for standby counsel and for the government, and they start making decisions without him. And he was told that he would be part of these decisions, but he's not. If you read the actual bench conferences during voir dire, there are affirmative agreements made by standby counsel. Affirmative agreements to allow jurors to be excused for cause. Mr. McNoriel was none the wiser. He would not know that those things are happening. In particular, there's a discussion with one... A discussion about a juror that may have seen Mr. McNoriel in shackles. And what happens at this bench conference without Mr. McNoriel is it's decided we're going to pass over that defendant. We're not going to move him into the presumed box. So McNoriel would not have seen anything to indicate to him that there had been an affirmative tactical decision made about his jury, which is to release this juror without questioning the juror at all about whether or not that was what he wanted to do. Wouldn't it be incumbent on him to piggyback on what Judge Batchelder asked, to object? If he sees this happening, this exchange or exchanges, he's like, wait a second, that's not what we agreed to. He's now his own lawyer. Shouldn't he object? If he knew it was happening, he's not there. So he's learning about these things. You're saying he can't even see it in the courtroom? He can only see that they're up there talking without him. So if you're just going to skip a juror and you're not going to bring him into the box, he wouldn't know that happened. He may see some jurors leave. I don't even think that happens. I mean, I'm not familiar with this courtroom. But you would not know that decisions are being made without you. You wouldn't know that the four cause affirmative decisions, that what happens at these bench conferences is a pretty routine, in terms of doing a lot of trials, consensus is reached about these four cause challenges. Why couldn't he have said at the outset, didn't he have the opportunity to say, I want to at least be listening. I want to hear what's going on here. But he agreed to have his standby counsel doing this part of the trial, the jury selection. Effectively what he agreed to, though, is that he would be listening in the sense that his lawyer would consult with him on the decisions. So it said, when the court told him what the court's plan was, when he said, I agree with that, the court told him that Mr. Graham, standby counsel, will communicate to me what you want. And you'll have the list for cause. You'll tell him to tell me why that person should be stricken for cause. So the plan was for him to know what was happening and his input to be there. But that's not what the reality showed. I mean, do we know that for a fact from the transcript? I mean, do we know that there wasn't some consultation? And then the standby counsel's up there kind of conveying Mr. McNoriel's  I think that is, I think we can read into the transcript that that happened. I mean, I think it's a very important question. Because you can see in like the first bench conference, Mr. Graham, standby counsel, says, he kind of follows this plan. He says, Mr. McNoriel would like to challenge this person for cause for the following reasons. All good. Plan is in place. But every time after that, you know, you've got the government approaching. So he obviously doesn't know what's about to happen there. But for all he knows, it's I mean, a lot of sidebars are housekeeping stuff. So he's not knowing what's happening. A housekeeping bench conference would not be an issue under what we're saying. But these are challenges for cause. And you have, for one example, you have a woman that approaches that says, I am, you know, I've been raped before. I'm a victim of a crime. And that person gets let go. Before the lawyers talk to that, like this is, again, common for trial practice, you ask some questions as the defense lawyer to that witness or to that prospective juror. In this case, the judge even says, it's important for us, for you to tell us the truth up here, ma'am, because these gentlemen need to make an informed decision. That informed decision about whether to release that juror is made by standby counsel. It is a tactical decision. The jury could have been different if Mr. McNoriel was there, because it's not that far of a stretch to think that Did Mr. McNoriel not hear the questioning of the juror? No, he wouldn't be able to hear that. That happens at the bench. All of the jurors, the potential jurors were questioned at the bench privately. There was no general Only the juror that wanted to talk about the fact that she had been raped. So what happens is that juror comes to the bench conference and explains these things. So he doesn't hear what is happening with that juror. He's away at his table. And the judge is asking that juror questions so that the lawyers at the bench conference can, quote, make an informed decision. But he's back at the bench for that. The normal, where you're questioning jurors about things that aren't in private, then yes, he can hear that. He's a part of that. The part he's not a part of is the bench conference. I thought he expressly agreed that standby counsel could handle the bench conferences. And that's on the record in court. He agreed to if, but what he agreed to, again, was a plan that he was going, his input was still going to be there for the bench conferences. But that plan wasn't followed. Well, it's not going to be there if he's not at or attending the conference and things are being decided up there and he's agreed that that could happen. Well, but that's not what he was told. He was told that it was going to be a telephone, that his input. So if the lawyer would have What was he told, did you say? He was told, the jury will, okay, I will look at it. This is the judge. The jury will not know who wrote what down. Okay, that's peremptories. Then we will have sidebars. Now in this circumstance representing yourself, the government will come up and Mr. Graham. You will tell Mr. Graham, this is what I want to do, strike for cause. You can write that down and tell the judge. They can't be fair because they said A, B, and C. Mr. Graham will communicate to me who you want, right? You'll have that list, who you want for cause. You will tell Mr. Graham to tell me why, right? That person should be stricken for cause. And then I will make a ruling. It's your decision. This is your jury and you need to feel good about them. So that's what he agreed to. But that's not what happened. Because what once this muscle memory kicked in with all the lawyers and the judge where decisions start to be made, you know, jurors that have scheduling conflicts. There's different thoughts about how to handle that. I teach voir dire and sometimes there's people who think you should not let people go for scheduling conferences or scheduling issues right away. You should wait. Well, why wouldn't his lawyer have thought that there was no concern or objection because he didn't try to interrupt or submit a note to the lawyer pertaining to a particular juror or whatever the issue happened to be. He could have done that, presumably, don't you think? I mean, there are, he could have been more obstructive, but you know, this is a procedure that he was told would happen by the court. Well, not only was he not obstructive, even though the judge said that the defendant, told the defendant that he was in charge of his own case and he would make the decisions and standby counsel was only there to advise in an advisory capacity, even though the defendant was told that, the defendant proceeded to agree that the lawyer would be more involved than the role of standby counsel in that he agreed to let the counsel give opening statement he agreed to let the counsel examine witnesses, I think at least two witnesses. He permitted counsel to do all manner of things that you don't normally do if you're just there in the capacity of standby counsel. So this was more of a hybrid situation where he let the the defendant's position was being tried basically by two people, the defendant himself and standby counsel with the defendant's permission. It's the way it looks if you just look at the record of the trial. So I have two responses to that. One is that hybrid counsel historically, as described by this court, is on this side of the line. It is you are represented by counsel, but the court allows some flexibility for you to supplement your counsel. This was not hybrid counsel. The government's not arguing that this was hybrid counsel. This was he is in control of his defense. Now, as someone in control of his defense on this side of the line, he is able to delegate. He can even delegate arguments, legal arguments and witnesses to his lawyer, as long as he's present. This is where his presence at the critical stage matters. So as that lawyer is making opening statements, as that lawyer is making objections and arguments, he is hearing them. And what Wiggins tells us, it tells us that in the event that that lawyer, who's allowed to make arguments as standby counsel, says something that the pro se defendant disagrees with, what Wiggins tells us is the pro se defendant's position rules the day. That can't happen if he's not there. Well, it looks like to me it was hybrid representation, even though the judge and everybody said that it wasn't. But in actuality, that's what it turned out to be with the defendant's permission. If you look at the record of the trial, that's what it, I mean, the standby counsel, so-called, was actively involved in the trial proceedings, presumably with the defendant's permission. And he could have interrupted that or, you know, returned to the original perspective that only he would be the decision maker. But that didn't seem to happen. I think that the case law forecloses the idea that the hybrid counsel can be walked into and cross this line. I think the trial court did get it right, that it's an either or. And this was a case of pro se. And you're allowed to let your lawyer supplement when you are pro se, just like you're allowed when you are represented, the lawyer's allowed to let the defendant supplement. So it's hybrid, but it's the inversion of the one where he's represented. All right. You might want to wrap up. You're fairly late.  Sorry, Your Honor. Thank you much. Good morning, Your Honors, and may it please the Court, Beto Salitra on behalf of the United States. And I was also the counsel for the United States at the trial in this proceeding. The district court did not err by employing the sidebar procedure that it did, a sidebar procedure to which the defendant explicitly consented in the pretrial conference. At the pretrial conference, the district court asked the defendant whether he had any concerns. He said, not at all. They asked again whether it sounded acceptable. And he said, yep. And then at trial, we have before, during, and after each of these sidebars that occurred during voir dire. The defendant said nothing. He never said, where's that juror going? I liked her. Why is that juror staying? I didn't like him. What are you guys talking about there? And even in the Third Circuit, Fifth Circuit, Second Circuit cases that support the government's position, the only consent that you had was that, was that in court watching of it happening and saying nothing. Here we have even more because we have the defendant's statement at the pretrial. And I think it's also important here to look at the context. Now, the defense wants to present each of these sidebars as mysterious. The defendant having no idea what was going on. But the whole purpose of jury selection is to select jurors. And so you have a situation where the questioning of each of these jurors leading up to it can easily predict what is going to be discussed at the sidebar, even if the district court judge pre, even if the district court judge pre-judges the sidebars. The district court judge offered to strike for cause before even the parties did. And I'll give you an example. One of the jurors said during his questioning in open court, I have a seething hatred of drug dealers. Well, of course, the district court judge said at the sidebar, I think we need to strike this juror for cause. And both parties agreed. That juror who was seated in the box then walked out of the jury box and left the courtroom. You had another instance with the rape victim that was discussed. Now, she stayed on the jury. But she described in open court during the voir dire that she had been the victim of a crime. She had been asked to, she had dropped those charges. She never went forward. She'd basically been discussed. So we have the context here. And then for also, the other important piece of context here is that for the majority of these sidebar conferences about these particular jurors, there's one new juror in the box. So it's pretty clear as to what juror is going to be discussed. It's the one new juror in the box. And that is the case for at least five of these eight sidebars. And I also think it makes sense when you look at the trial as a whole and how they handled the case. There was a division of labor between Mr. McNourial and standby counsel. And it makes sense why Mr. McNourial delegated this portion of the trial, voir dire, which is highly technical, based on experience, to an attorney who had 80 to 85 federal jury trials. And we see after the fact, too, he used standby counsel to make opening statements, to examine witnesses. So there was never what we have in some of these cases, a conflict. Even if the court thinks at points there may have been an error, I think there are two important things to consider. First, we do believe this should be a plain error standard. And just because it is a structural error and we don't consider it the prejudice prong of plain error, the error still needs to be clear and obvious. And I think you have multiple circuit courts on worse facts than ours saying that this is not a FERRETA violation. And second, that even when you don't have the aspect of consent, and the court is just assessing whether the encroachment on the FERRETA rights were enough to diminish the defendant's actual control, I think even if the court were to find that there was no consent, were the defendant's FERRETA rights encroached enough where he lost actual control, meaning he lost the opportunity to try the case in his own way. And that is belied by the record. I think here it's also important to look at the context of the defendant himself. We have a defendant who has gone through five different attorneys in 16 months at the district court who brought six motions, pre-trial motions, on his own accord as pro se. He raised jury instructions. He made objections at trial. This was not a defendant who was afraid to speak up if something about his case was not going the way he did. And he never did. So, unless the court has any additional questions, we think the judgment of the district court should be affirmed in its entirety. Thank you. Thank you. Thank you, Your Honors. As to the plein air standard, I think it ultimately is answered by the exact same question that we've been talking about before, whether he consented or not. I agree that he can consent, as the pro se lawyer, he can consent to delegating task and delegating arguments to his counsel, to the standby counsel. But that can't happen without him. And Mr. McNorial learned several things about his trial and his jury when he got the transcript in this case. He learned about the rape situation. He learned about why a line of questioning that he thought was going to go to credibility of the police officer was shut down. He learned a lot about how his jury was picked when he got the transcript because he didn't know that these decisions were being made and a consensus was being reached. He's not a lawyer that knows exactly what's happening with... He sure wanted to pretend to be one, didn't he? He did. And, you know, that's, you know, that's his right. So he has this... Sure, it is. But it does look a little as if he is now saying, I would like to have it both ways. I don't think he's, the current, our current position is asking it for both ways. It's one way that I was in charge and I was going to get to hear everything. I'm concerned by this statement in your brief and I am concerned by this. Mr. Graham's unsolicited participation in all sidebar conferences without Mr. McNorriell's presence or consent violated each of these prohibitions. Unsolicited, no consent, and I'm not sure how I can read the record to support that. Because the decisions being made were without his knowledge, so... But he knew and consented, I think I'm right about this, he knew at the outset that he would not be permitted to approach the bench. He did know that. So what went on at the bench, he knew that that's how it was going to be conducted and he consented to that. But he did, he consented to a plan that his words were going to be conveyed. Essentially what he was saying was, I consent to this unless I don't like it. He consented to it unless decisions were going to be made without him. And that's what happened. Tactical decisions were made without him. He did not know that that was going to happen. He never was told. In fact, he was told the opposite. He was told that he was going, that this was going to be his jury, that he would be the one picking and excusing jurors. Just letting jurors go, that is an affirmative decision that was taken out of his hands, that he was to make, and he wasn't present for. Thank you, Your Honor. Thank you. Counsel, I know you were appointed pursuant to the Criminal Justice Act and you do that as a service to the court, so the court would like to thank you for taking this case and representing the defendant here. Thank you. Thank you.